UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

NICHOLAS WRAY,

     Plaintiff,

v.                                       Case No. 1:20cv156-AW-HTC

KILOLO KIJAKAZI[1], Commissioner
  of Social Security,

     Defendant.
_____/

## **ORDER and**
## **REPORT AND RECOMMENDATION**

     This case is before the Court on Nicholas Wray's ("Wray") complaint under

42 U.S.C. § 405(g) seeking review of the final determination of the Commissioner

of Social Security ("Commissioner"), denying his application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42

U.S.C. §§ 401-34.[2]  ECF Doc. 1.  The matter was referred to the undersigned for

report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(D).

---

[1] When this action commenced, Andrew Saul was the Commissioner of Social Security.  However, on July 9, 2021, Kilolo Kijakazi became the acting Commissioner.  According to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this matter.

[2] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security

Upon review of the record, Wray's complaint and motion for summary judgment (ECF Doc. 19)[3], and the Commissioner's response (ECF Doc. 20), the undersigned finds the ALJ's denial of DIB to be supported by substantial evidence and, thus, recommends the decision be AFFIRMED.

## I.    ISSUES ON REVIEW

Wray raises two issues: (1) The Administrative Law Judge  ("ALJ") erred in relying on outdated medical opinion evidence from 2015 and ignoring more recent medical opinion evidence from 2018 in determining Wray's residual functional capacity ("RFC") and (2) The ALJ erred in posing a hypothetical to the vocational expert ("VE") that did not include a limitation based on tinnitus and a need to avoid exposure to loud noises.

## II.    PROCEDURAL HISTORY

On June 19, 2018,[4] Wray applied for DIB, alleging an onset date of January 1, 2013.   Tr. 188-89.[5]   The agency denied Wray's application initially and on

income benefits ("SSI").  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).  Thus, regardless of a whether a referenced statute herein addresses DIB or Supplemental Security Income, the legal principle at issue applies equally to both claims.

[3] As part of the Court's review, the Court determines whether the Commissioner's decision should be affirmed, reversed, or reversed and remanded.  Thus, it was unnecessary for Plaintiff to file a motion for summary judgment.  The Clerk will therefore be directed to terminate the motion and the Court will consider the motion as Plaintiff's supporting memorandum.  *See* ECF Doc. 16 (ordering Plaintiff to submit a supporting memorandum and for the Commissioner to submit a response).

[4] The Application Summary is dated June 19, 2018, but the ALJ and both parties give the date of the Application as June 1, 2018.  Tr. 188

[5] The Commissioner submitted a transcript consisting of seven (7) volumes, ECF Doc. 15-1 to 15-7, which are consecutively numbered.  As used herein, "Tr._" refers to the transcript page number.

reconsideration.  Tr. 60-75, 80-94.  The ALJ held a hearing on February 10, 2020, Tr. 33-59, and issued an unfavorable decision on April 1, 2020, Tr. 12-32.  On May 27, 2020, the Appeals Council denied Wray's request for review.  Tr. 1-6.  Wray filed this action for judicial review on July 14, 2020.  ECF Doc. 1.  This civil action is ripe for review and timely filed under 42 U.S.C. § 405(g).

## III.   FINDINGS OF THE ALJ

In his written decision, the ALJ made several findings relative to the issues raised in this appeal:

•    Through the date last insured, Wray had the following severe impairments: posttraumatic stress disorder (PTSD), residuals of a foot injury, and lumbar degenerative disc disease (20 CFR 404.1520(c)).  Tr. 18.

•    None of these impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  *Id.*

•    Wray, through the date last insured, had the following RFC:

to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: a 30 minute sit/stand option; occasional climbing ramps and stairs, no climbing ladders, ropes, and scaffolds; no balancing; occasional stooping, kneeling, crouching, and crawling; and no concentrated exposure to vibrations, work around moving mechanical parts, or work at unprotected heights. The claimant requires a monocane to reach the workstation, but he does not require it at the workstation. He is limited to performing work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days). The claimant is able to deal with the

changes in a routine work setting. Socially, he is able to relate adequately to supervisors with only occasional coworker and no general public contact.

Tr. 20.

•   Through the date last insured, Wray was unable to perform any past relevant work (20 CFR 404.1565). However, considering Wray's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)). Tr. 27.

•   Therefore, Wray was not under a disability, as defined in the Social Security Act, at any time from January 1, 2013, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)). Tr. 28.

## IV.    STANDARD OF REVIEW

Pursuant to 20 C.F.R. § 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five (5) steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period

of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[6]

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, he is not disabled.

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395

---

[6] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.   *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'"   *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).   Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

## V.    ANALYSIS

Wray was 35 years old when he applied for DIB benefits. Tr. 27. Wray served in the United States Marine Corps where he held a variety of different jobs, including working in the maintenance for aircraft and food services. Tr. 38. Although Wray stated in a Disability Report that he has not engaged in gainful employment since January 2013, T. 224, he told the ALJ he has not worked since leaving the Marine Corps in 2012, Tr. 37. Wray stopped working because of PTSD, back pain, and hip problems. Tr. 224.

Given the limited issues on appeal, the undersigned discusses herein only those portions of Wray's medical history and testimony which are relevant to those issues. Indeed, Wray accepts the statements of testimony and document evidence recited by the ALJ in his decision. ECF Doc. 19 at 4.

A.    **The ALJ Considered the 2018 PTSD DBQ[7] in His Decision and Any Failure to Articulate the Persuasiveness of the 2018 PTSD DBQ was Harmless Error**

Wray argues the ALJ erred in citing to a 2015 medical opinion from the VA in reaching his RFC determination, rather than a more recent opinion from 2018. ECF Doc. 19 at 7.  The 2015 opinion referred to by Wray is a PTSD DBQ which was prepared by Dr. Tracy Hunter, a licensed psychologist, on April 10, 2015.  The 2018 opinion is another PTSD DBQ, completed on January 4, 2018, this time by Thomas R. Van Den Abell, Ph.D., a clinical neuropsychologist at the VA.

In both DBQs, the physicians checked the box indicating Wray suffered from "occupational and societal impairment with deficiencies in most areas, such as work, school, family relations, judgment thinking and/or mood."  Tr. 345, 311.  In both DBQs, the physicians checked the box indicating Wray suffered from "Irritable behavior and angry outbursts (with little or no provocation) typically expressed as verbal or physical aggression toward people or objects"; "Hypervigilance"; "Problems with concentration", and "Sleep disturbance (e.g., difficulty falling or staying asleep or restless sleep)."  Tr. 350, 315.

---

[7] A DBQ is a Disability Benefits Questionnaire used by VA physicians to identify the symptoms, severity, and impact of a veteran's service-related condition and is relied upon by the VA to determine a veteran's service-connected disability rating if any.  It is generally completed by the physician after a Compensation and Pension Exam (C&P Exam) is performed.  *See* https://www.va.gov/disability/va-claim-exam/

In the 2015 PTSD DBQ, Dr. Hunter identified the following symptoms: depressed mood, anxiety, and chronic sleep impairments.  Tr. 351.  Dr. Hunter opined that Wray was moderately limited in the following area because of his PTSD: To work cooperatively and effectively with coworkers, supervisors, and the public; to understand and follow instructions; to maintain task persistence and pace; and to work a regular schedule without excessive absences.  Tr. 355-56.  Dr. Hunter opined Wray was mildly limited in the following area because of his PTSD:  To retain instructions; to communicate effectively in writing; to solve technical or mechanical problems; and to arrive at work on time.  *Id.*

Dr. Van Den Abell, however, did not provide an opinion regarding Wray's limitations in the 2018 DBQ, stating instead, that he could not make a "statement on the veteran's residual capacity for productive employment" because of Plaintiff's "resistance and lack of full cooperation" during the examination, making such a determination "near impossible".  Tr. 317.  Dr. Van Den Abell noted that Wray "appears to be resistant to fully admitting the extent of his problems and difficulties, but at the same time provides extreme responses in many psychopathological domains."  *Id.*

Dr. Van Den Abell also did not recommend formal psychological testing because, "It is doubtful that any such assessment would be meaningful or useful at this time.  Veteran was extremely resistant, sullen, and avoidant of questioning in

many domains.  At other times, veteran appeared to be markedly over endorsing both severity and frequency of psychopathologic symptoms."  Tr. 318.  Dr. Van Den Abell, however, did identify additional symptoms that were not identified in the 2015 DBQ, including the following: (1) Suspiciousness; (2) Disturbances of motivation and mood; (3) Difficulty in establishing and maintaining effective work and social relationships; (4) Difficulty in adapting to stressful circumstances, including work or a work like setting; and (5) Inability to establish and maintain effective relationships.  Tr. 315.

1.    The ALJ Adequately Considered the 2015 and 2018 DBQs

In claims filed after March 27, 2017 – such as this one – the SSA's revised regulations apply.  Those regulations state as follows regarding how the agency considers disability decisions from other governmental agencies, such as the VA:

> …in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).
> 20 C.F.R. § 404.1504.

Thus, while the ALJ was not required to provide any analysis regarding the VA's decision to award disability benefits to Wray[8], the ALJ was required to

---

[8] The VA assigned Wray a 70% disability rating based on PTSD.  Tr. 25.

consider the evidence, including medical opinions, that supported the VA's decision to award benefits.  *See Reynolds v. Comm'r of Soc. Sec.,* 2021 WL 5002735, at *5 (M.D. Fla. Oct. 28, 2021); *Ealey v. Comm'r of Soc. Sec.*, 2021 WL 20212384, at * (S.D. Miss. May 7, 2021), *report and recommendation adopted sub nom. Ealey v. Saul*, 2021 WL 2211445 (S.D. Miss. June 1, 2021).  After a review of the record as a whole, the undersigned finds the ALJ adequately considered both the 2015 DBQ and the 2018 DBQ and the ALJ's decision is supported by substantial evidence.

In reaching his RFC determination, the ALJ considered all the medical opinions and prior administrative medical findings, including multiple records from the VA.  In fact, the ALJ's discussion of the VA records comprises six (6) pages of the ALJ's decision.  Tr. 21-26.  Starting on page 9 (Tr. 23) of the decision, the ALJ begins his discussion of the 2018 DBQ and quotes extensively from it to support his determination that Wray's PTSD could not reasonably cause the symptoms to the extent alleged by Wray and why "the totality of the evidence does not support the presence of an impairment, or combination thereof, that imposes listing level restrictions or that substantially interferes with [Wray]'s ability to perform a reduced range of light work activity."  Tr. 24.

The ALJ, for example, discussed Section I.2 "Current Diagnoses" of the 2018 PTSD DBQ's to show Plaintiff's lack of seeking and receiving treatment.  Tr. 23 (citing 3F/4-5).  The ALJ also cited the 2018 PTSD DBQ to support the finding that

Plaintiff was uncooperative in reporting symptoms and that his symptoms were exaggerated. Tr. 23-24. The ALJ, therefore, not only considered the 2018 PTSD DBQ, but he relied upon them.

Also, the undersigned finds no error in the ALJ's consideration of the 2015 PTSD DBQ. While that DBQ was older, it remained relevant. *See Watkins v. Comm'r, Soc. Sec. Admin.,* 2016 WL 184425, at *3 (D. Or. Jan. 15, 2016) ("[m]edical records from years prior are certainly relevant to the longitudinal picture of Watkins's mental impairments that the regulations required the ALJ to develop in this case"); citing 20 C.F.R. § 404.1520a ("Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

As the Commissioner points out, the 2015 DBQ was two (2) years post-onset date, and Wray points to no evidence in the record of any intervening events which would have worsened Wray's PTSD between 2015 and 2018. *Cf. Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018) ("[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion"). Indeed, in the 2018 DBQ, Dr. Van Den Abell notes that Wray "has not had any active mental health or consistent medical treatment since September 2016," when he was undergoing

neurologic evaluation for lower back pain and incontinence.  Tr. 306; *see also,* Tr. 312 (noting that Wray denied any further training, education, or vocational services in the interim since his 2015 C&P examination).

Thus, as an initial matter, the undersigned finds no merit in Wray's argument that the ALJ erred in relying on the 2015 DBQ and ignored the 2018 DBQ.

2.    The ALJ's Failure to Specifically Discuss the Persuasiveness of the 2018 DBQ was Harmless

Despite the ALJ's clear consideration of the 2018 DBQ, Wray argues the ALJ erred in not articulating the persuasiveness of the medical opinion.    The Commissioner responds that the 2018 DBQ was not a "medical opinion" and even if it were, any error by the ALJ in not assessing the persuasiveness to the opinion was harmless.

As stated above, because Plaintiff filed his claim in June 2018, the revised standards in 20 C.F.R. § 416.920c apply to how the ALJ must consider and articulate medical opinions and prior administrative findings.  The ALJ no longer needs to defer to or give specific evidentiary weight to any medical opinions or prior administrative medical findings.  *Id.* at §416.920c(a).  Instead, the ALJ must articulate how persuasive he or she finds all of the medical opinions and all of the prior administrative medical findings in the case record based on the factors listed in  §  416.920c(c): supportability, consistency, relationship with the claimant, specialization, and familiarity with the Social Security disability program's policies

and evidentiary requirement. "The most important factors … are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 416.920c.

Also, under the revised standards, the ALJ does not have to articulate how she or he considered each medical opinion or prior administrative medical finding from one medical source individually. Instead, the ALJ may consider "the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1).

The revised regulations define a "medical opinion" as follows:

A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513.

At least one district court has specifically held that a DBQ is a medical opinion. *See Ealey v. Comm'r of Soc. Sec.,* 2021 WL 2212384, at *4 (S.D. Miss. May 7, 2021), *report and recommendation adopted sub nom. Ealey v. Saul*, 2021 WL 2211445 (S.D. Miss. June 1, 2021) (holding that "Mental Health C & P Examination Consult and Disability Benefits Questionnaire" opining that Plaintiff suffered "PTSD and major depressive disorder; suffered from occupational and social impairments; reported significant PTSD symptoms; had short-term memory impairment, spatial disorie[n]tation, distressed mood, and poor eye contact" was a medical opinion under Social Security regulations). The Commissioner points to no countervailing authority.

Regardless, the undersigned need not decide that issue because the ALJ specifically stated, after discussing all of the VA records, including the 2018 DBQ in the decision that, "the clinical findings and medical opinions of the VA medical staff are generally persuasive." Tr .25. After discussing some additional VA records, the ALJ repeated this finding, stating, "[t]he aforementioned medical opinions from the VA medical staff are generally persuasive". Tr. 26. The ALJ explained that, "the medial opinions reflect a longitudinal perspective of the

claimant's impairments, and the opinions are generally supported by medical signs, medically acceptable diagnostic test results, and clinical findings." Tr. 26.

Because of the effective date of the new regulations, there is a dearth of caselaw on what constitutes a sufficient explanation of supportability and consistency. *See, e.g., Moore v. Saul,* 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021). Most courts which have addressed this issue have determined an ALJ adequately explains persuasiveness when the ALJ's discussion enables the court to undertake a meaningful review of whether the ALJ's finding with regard to a particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof. *See e.g., Burba v. Comm'r of Soc. Sec.*, 2020 WL 5792621 (N.D. Ohio Sept. 29, 2020), *Moore*, 2021 WL 754833, at *3. The undersigned finds the ALJ has met that burden here with regard to both the 2015 and 2018 DBQs.

Although the ALJ did not include the 2018 DBQ specifically in his string citation to the record following those statements, it is clear when reading those statements in context, the ALJ's finding there applied to all the VA medical opinions discussed in the decision. As stated above, the ALJ could consider all of the VA records together and did not have to articulate a specific finding as to each. Clearly, the ALJ's failure to provide the record cite to the 2018 DBQ after articulating the

persuasiveness of the VA medical opinions was a typographical or clerical error. *See e.g., Roberson v. Astrue*, 2012 WL 3628678, at *4 (N.D. Ala. Aug. 17, 2012) (finding that a single reference to the claimant's ability to perform light work was a typographical error because the record clearly indicated that the ALJ intended the claimant to perform sedentary work with exceptions); *Moore v. Astrue,* 2008 WL 216605, at *4–5 (D.S.C. Jan. 24, 2008) (stating that a claimant's depression was a "severe impairment" in the facts section of the decision was clearly a scrivener's error because the ALJ analyzed it as a non-severe impairment "at length" in the remainder of the opinion); *Gamez v. Colvin*, 2014 WL 2807646, at *4 (N.D. Ala. June 20, 2014) ("although the language used by the ALJ is ambiguous at best, or perhaps the result of a clerical error, there is no error here because the ALJ's intended meaning can be discerned from other portions of his decision and the record").

Thus, any error by the ALJ was harmless.  *See Knight v. Comm'r of Soc. Sec.,* 783 F. App'x 962, 965 (11th Cir. 2019) (affirming district court's finding that the ALJ's mistake of fact was a typographical and, thus, harmless error); *Harris v. Astrue*, 2008 WL 4725194, at *7 (S.D. Fla. Oct. 24, 2008) ("Although the language used by the ALJ in writing the opinion may have included several misstatements of the record, further review of the record in its entirety would indicate the ALJ's [ ] analysis was in fact supported by substantial evidence.").

Moreover, the 2018 DBQ supported rather than contradicted the ALJ's determination, furthering making any error by the ALJ harmless. *See East v. Barnhart,* 197 F. App'x 899, 901 n. 3 (11th Cir. 2006) (indicating that failure to mention psychologist's report was harmless where findings in report were consistent with ALJ's ultimate determination). For example, the 2018 DBQ is consistent with the ALJ's determination that Wray "has not participated in mental health care on a consistent basis, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal." Tr. 26. As the ALJ discussed, in the 2018 DBQ, Dr. Van Den Abell specifically noted Wray does not participate in mental health treatment and is not utilizing psychotropic medications. Tr. 24.

Also, the symptoms referenced by Wray in his memorandum as coming from the 2018 DBQ, such as "claimant had occupational and social impairment with deficiencies in concentration in most areas such as work, school, family relations, judgment, thinking and/or mood," "irritable behavior and angry outbursts", problems with concentration and sleep disturbance," and "difficulty in adapting to stressful circumstances," (ECF Doc. 19-7) are all symptoms that were also identified in the 2015 DBQ. They are also symptoms the ALJ specifically noted in his discussion of the 2018 DBQ. For example, the ALJ quotes from Dr. Van Den Abell's remarks that Wray was "very angry, resistant, and sullen" during the

interview; and that Wray reported himself as being a threat to others around him because of his anger, disinhibition, and aggressive responses.  Tr. 24.

The 2018 DBQ supported the ALJ's determination that Wray's medical determinable impairments could not cause the extent of the symptoms reported by Wray.  Tr. 24.  Notably, Dr. Van Den Abell wrote that Wray "would often respond very vaguely and nonspecifically to clinical questions about the frequent and intensity of his symptoms[,]" while at "[o]ther times, it appeared that he was responding in extreme fashion."  Tr. 307.  Dr. Van Den Abell also noted during the C&P examination that Wray "indicated that he felt he was totally incapacitated by his ongoing symptoms, but when asked to expand and discuss his problems, became very nonspecific"  Tr. 316.  Dr. Van Den Abell stated that Wray "indicated extreme subjective somatic pain levels, extreme insomnia symptomology *beyond physiological limits*…."  Tr. 317 (emphasis added).  As a result, Dr. Van Den Abell opined that "[Wray]'s current self report of his symptoms is not fully reliable, nor credible."  Tr. 317; *see also,* Tr. 318 ("veteran appeared to be over endorsing both severity and frequency of psychopathologic symptoms").

Finally, because of Wray's "resistance and lack of full cooperation" Dr. Van Den Abell was unable to make a statement on Wray's residual capacity for productive employment, stating instead that doing so was "near impossible."  Tr. 317.  There is no indication, therefore, that Dr. Van Den Abell would have concluded

Wray was more than moderately or mildly limited by his mental impairments as determined by Dr. Hunter. Thus, there is no evidence in the record that any additional or further consideration of the 2018 DBQ would have made a difference to the ALJ's opinion, such as would be necessary to warrant a remand.

**B.   The ALJ Did Not Err in Failing to Include Restrictions Relating to Tinnitus and Loud Noises in the Hypothetical to the VE**

Wray argues the hypothetical posed to the VE and relied upon by the ALJ to make his RFC findings should have included the need to avoid exposure to loud noise work environments. Wray, however, provides no citations to medical records from visits or examinations where he complained about his tinnitus or that he reacted adversely to loud noises. Also, the Court's close review of the medical records shows that no such complaints exist in the record.

While various medical reports generated during the covered period mentioned a VA disability rating of 10% for tinnitus, Wray never complained of tinnitus to a medical provider and none of the providers specifically mentioned tinnitus other than in the list of VA disability ratings. Tr. 275 (Jan. 2013); Tr. 278 (Feb. 2013); Tr. 411 (June 2013); Tr. 458 (June 2013); Tr. 431 (Aug. 2013); Tr. 484 (July 2014); Tr. 470 (Aug. 2014); Tr. 472 (Sept. 2014); Tr. 344 (Apr. 2015); Tr. 305 (Jan. 2018); Tr. 308 (Jan. 2018); Tr. 371 (Oct. 2018); Tr. 376-77 (Oct. 2018); Tr. 389 (Oct. 2018); Tr. 610 (Nov. 2018); Tr. 606 (Jan. 2019); Tr. 589 (Mar. 2019). A line-by-line review of the medical records reveals that neither Wray nor a physician ever mentioned a

need to avoid loud noises during his medical visits. Finally, Plaintiff was asked by the ALJ at the hearing to describe his limitations due to PTSD and neither Plaintiff nor his counsel mentioned a need to avoid loud noises. Tr. 33-59.

Wray argues, nonetheless, that "[t]he court may take judicial notice of commonly recognized environments, which are contraindicated for persons with certain conditions. Medical literature suggests that persons with tinnitus should avoid frequent exposure to loud noise. It is also generally recognized that loud noise may trigger or aggravate symptoms of persons with PTSD." ECF Doc. 19 at 9. Wray, however, does not cite any examples of the "medical literature" to which he refers.

Regardless, an ALJ is not required to include findings in either the RFC or hypothetical posed to the VE that the ALJ finds are not supported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). As noted above, nothing in the record supports a finding that Wray needed to avoid loud noises; therefore, the ALJ had no reason to include that in the RFC and hypothetical question. *See Bryant v. Comm'r of Soc. Sec.*, 2021 WL 4067464, at *5 (M.D. Fla. July 29, 2021), *report and recommendation adopted,* 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021) ("Because Bryant does not cite to any records establishing or even mentioning fibromyalgia

during the relevant time period, substantial evidence supports the ALJ's RFC finding as to fibromyalgia.").

Also, the mere fact that tinnitus was diagnosed does not mean that it must be included in an RFC determination or hypothetical question.  That is, "the mere existence of these impairments does not reveal the extent to which they limit [his] ability to work or undermine the ALJ's determination in that regard."  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")).  Because nothing in the record showed that tinnitus impaired Wray's ability to work; the ALJ did not err in failing to include tinnitus in the RFC or hypothetical to the VE.

## VI.    CONCLUSION

Accordingly, it is ORDERED:

1.    The clerk is directed to terminate the motion for summary judgment (ECF Doc. 19) for the reasons set forth herein.

It is also respectfully RECOMMENDED that:

1.    The Commissioner's decision denying benefits be AFFIRMED.

2.    The clerk be directed to enter judgment in favor of the Commissioner

and close the file.

Done at Pensacola, Florida, this 3rd day of December, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.